UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SUDHARTA LIM
(A-Number: 088-481-254),

                    Petitioner,

          v.

MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security; U.S.
DEPARTMENT OF HOMELAND
SECURITY; PAMELA BONDI, U.S.
Attorney General; EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW;
WARDEN, California City Detention
Facility,

                    Respondents.

No.  1:26-cv-02368-KES-EGC (HC)

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS

Docs. 1, 5

Petitioner Sudharta Lim is an immigration detainee proceeding with a petition for writ of habeas corpus and motion for temporary restraining order.  Docs. 1, 5.  For the reasons explained below, the petition for writ of habeas corpus is granted.

I.      Background[1]

Petitioner is a citizen of Indonesia who entered the United States on a B-2 visitor visa in 2005.  Doc. 1 at ¶¶ 16–17.  Petitioner overstayed that visa.  *See id.* ¶¶ 17–18.  Immigration authorities initiated removal proceedings against him in 2008, and he filed an application for asylum and withholding of removal.  Doc. 7-1, Ex. 1 at 3.  On March 20, 2012, an immigration judge ordered petitioner removed from the United States but granted his application for

---

[1] The facts set out in this section come from petitioner's verified petition and other evidence in the record.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1

withholding of removal to Indonesia. *Id.* Immigration and Customs Enforcement ("ICE") detained him, but petitioner was eventually released under an Order of Supervision, presumably because ICE was unable to remove him. Doc. 1 at ¶¶ 19–20; *see* 8 C.F.R. § 241.4(e) (noting that ICE may not release a noncitizen who has been ordered removed unless "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest," among other things).

Respondents do not dispute petitioner's assertion that, for nearly fourteen years, he fully complied with the terms of his Order of Supervision. *See* Doc. 21 at ¶¶ 21–22. He has two adult daughters who reside in the United States and were also granted withholding of removal to Indonesia. *See id.* at ¶ 23. Petitioner's mother, who is a United States citizen, is currently battling leukemia, and petitioner is her caregiver. *Id.* ¶ 25.

On January 7, 2026, when petitioner reported to an ICE office for a scheduled check-in, ICE revoked his Order of Supervision and re-detained him. Doc. 1 at ¶¶ 26–28. Respondents do not dispute petitioner's assertion that ICE failed to provide him with any notice that he would be re-detained and provided no explanation for why it was revoking his release after nearly fourteen years. *Id.* at ¶¶ 26–28, 36–37; Doc. 7. Respondents also do not dispute petitioner's assertion that he was not provided with any opportunity to contest his re-detention, including at an informal interview as required by 8 C.F.R. § 241.13(i)(3). Doc. 1 at ¶¶ 33–44; Doc. 7.

On March 27, 2026, petitioner filed a petition for writ of habeas corpus, Doc. 1, and he subsequently filed a motion for temporary restraining order, Doc. 5. The Court set a briefing schedule on the petition. Doc. 6. Respondents filed an opposition, Doc. 7, and petitioner filed a reply, Doc. 8.

## II.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

2

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    Discussion**

Petitioner argues that ICE's revocation of his release violated ICE's regulations governing how and when it may revoke release and violated the Due Process Clause of the Fifth Amendment.[2]  *See* Doc. 1 at ¶¶ 33–44.   The Court addresses those arguments below.

**a.  ICE Violated 8 C.F.R. §§ 241.13(i) and 241.4(l)**

The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) set out the procedures to be followed in revoking the release of a noncitizen who was previously released on an Order of Supervision. *See* 8 C.F.R. §§ 241.13(i), 241.4(l). Those procedures protect important due process rights.  *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").  Section 241.13(i)(3) sets out the following process:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he [will] be removed in the reasonably foreseeable future, or that he [] has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3); *see also Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025).

---

[2] Petitioner also raises a Suspension Clause claim.  Doc. 1 at ¶¶ 45–46.  The Court need not address that claim as petitioner is entitled to the relief he seeks based on the claims analyzed below.

Respondents do not contest petitioner's assertion that ICE did not inform petitioner of the reason for his re-detention and did not provide him with an informal interview. *Id.* at ¶¶ 26–28, 36–37; Doc. 7. Respondents do not offer any explanation for the government's failure to provide timely notification to petitioner or its failure to timely conduct an informal interview of petitioner, in violation of its own regulation. Nor do they provide any indication that they intend to correct this mistake.

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided . . ., [petitioner's] re-detainment was unlawful.").

As the regulation here was promulgated to protect noncitizens' due process rights, the agency's violation of the regulations requires petitioner's release. *See Rombot*, 296 F. Supp. 3d at 388; *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) ("ICE's failure to give Petitioner meaningful notice of the basis for its revocation of his release violated the regulation and due process."). When the government has not disputed a petitioner's assertion that ICE never provided an informal interview, "[c]ourts have found this violation alone to be sufficient grounds for habeas relief" and ordered the petitioner's immediate release. *Nguyen v. Andrews*, No. 1:26-CV-00015 DAD SCR, 2026 WL 263058, at *4 (E.D. Cal. Feb. 2, 2026), *report and recommendation adopted* No. 1:26-CV-00015-DAD-SCR, 2026 WL 412183 (E.D. Cal. Feb. 13, 2026); *see also Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-

4

CV-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (collecting cases); *Sphabmixay v. Noem*, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025).

### b. The Due Process Clause Requires a Hearing Prior to Being Re-Detained in Petitioner's Circumstances.

Petitioner further argues that the Due Process Clause bars ICE from re-detaining him without first providing a hearing at which it must show that he is a flight risk or danger or that there is a significant likelihood of his removal in the reasonably foreseeable future. *See* Doc. 1 at ¶¶ 38–44. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### i. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in

custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's release on an Order of Supervision was similar. For fourteen years, it allowed him to live in the community where, in addition to his other significant family ties, he acted as a caregiver for his mother, who is suffering from leukemia. *See* Doc. 1 at ¶¶ 23–25. Respondents do not dispute that petitioner complied fully with his release terms. The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### ii. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly fourteen years, and during that time, lived in the community in compliance with his release terms. His detention denies him that freedom.

Second, the risk of an erroneous deprivation of liberty is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbiter. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As another decision in this district found in evaluating a similar set of claims brought by a noncitizen who had been ordered removed, was subsequently released, and was then re-detained, "[t]he lack of any neutral review [under the regulations] creates a heightened risk of deprivation for Petitioner." *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *9 (E.D. Cal. Aug. 20, 2025).

The Ninth Circuit has explained the need for neutral review of the reasons for detention in a similar context, where a noncitizen was facing prolonged detention without a bond hearing and ICE had unilateral discretion whether to detain or release:

> Diouf's own case illustrates why a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6). The government detained Diouf in March 2005. DHS conducted custody reviews under § 241.4 in July 2005 and July 2006. In both instances, DHS determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggested he might flee if released. In February 2007, however, an immigration judge determined that Diouf was *not* a flight risk and released him on bond. If the district court had not ordered the bond hearing on due process grounds, Diouf might have remained in detention until this day.

*Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011).

7

Similar reasoning applies here, as ICE failed to timely provide even the notice and interview required by its own regulations.  *See Yang*, 2025 WL 2791778, at *9 ("[R]espondents [] failed to provide the informal interview required under the governing regulations. This fact suggests that the procedures created by the regulatory framework have proven insufficient to meaningfully mitigate the risk of erroneous deprivation of liberty in this case.").  In circumstances like these, the risk of erroneous deprivation is high.  *See Yang*, 2025 WL 2791778, at *9.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees.").  In immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before he was detained.  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782. Numerous district courts have held that these principles extend to the context of immigration

detention.[3]  Petitioner's re-detention without such a hearing violates the Due Process Clause.

**IV.    Conclusion and Order**

Accordingly,

1.  The petition for writ of habeas corpus, Doc. 1, is GRANTED.

2.  Respondents are ORDERED to release petitioner immediately.

3.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4.  The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:    May 11, 2026   

_____
UNITED STATES DISTRICT JUDGE

---

[3] *See, e.g.*, *Yang*, 2025 WL 2791778, at *7–10; *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).